# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| **MICHELLE L. CALL,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10CV00020 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Vernon M. Williams, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Ameenah Lloyd, Regional Assistant Counsel, and Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Michelle L. Call filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Call filed for benefits on February 23, 2006, alleging disability since October 22, 2005. Her claim was denied initially and upon reconsideration. Call received a hearing before an Administrative Law Judge ("ALJ"), during which Call, represented by counsel, a vocational expert ("VE"), and a medical expert testified. The ALJ denied Call's claim, as did the Social Security Administration's Appeals Council ("Appeals Council"), which denied her Request for Reconsideration. Call then filed her Complaint with this court, objecting to the Commissioner's final decision.

Call previously filed an application for DIB in April 2004. Her prior application was denied at all levels, culminating in a hearing decision dated October 21, 2005, and upheld by the Appeals Council on June 6, 2007.[1] The ALJ presiding over Call's current claim found no basis for reopening the 2005 decision, and thus applied res judicata effect to the previously adjudicated period. Accordingly, the ALJ limited the scope of Call's current claim to the dates of October 22, 2005 through December 31, 2006, Call's date last insured.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

---

[1] Call also previously applied for DIB in 2002. That application was denied and upheld by the Appeals Council in 2003.

II

Call was thirty-four years old when she filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.156(c) (2010). Call, who has a high school education, has worked in the past as a certified nursing assistant and a sewing machine operator. Call has not worked since August 2001.

Call claims her disability is caused by persistent lower back and leg pain following a 2001 back surgery, as well as depression resultant from this ongoing pain. She presented medical records to the ALJ at the administrative hearing to substantiate her claims. After reviewing Call's medical history, the ALJ determined that Call suffered from a back disorder with pain which is "severe" as that term is defined under the regulations. The ALJ found that Call did not suffer from any severe mental impairments. Overall, the ALJ found that Call's claims regarding her limitations were "not totally credible." (R. at 24.)

Based on this evidence, the ALJ concluded that none of Call's claimed impairments qualified as any of the agency's listed disabilities, either alone or in combination. The ALJ held that Call retained the residual functional capacity to perform work with a light level of exertion. Consistent with the findings of the testifying medical expert, the ALJ found that Call could lift twenty pounds occasionally and lift ten pounds frequently; sit and stand for six hours each in an

eight-hour workday when provided a sit/stand option; and perform occasional postural activities with the exception of climbing ropes, ladders or scaffolding. The ALJ also limited Call from operating automotive equipment or performing work involving exposure to unprotected heights or other hazards.

During the hearing, the VE testified that someone with Call's residual functional capacity would be able to perform the occupations of telephone clerk, night watchman, and survey worker. According to the VE, there were approximately 11,870 such jobs in the region and over 701,000 in the national economy. Relying on this testimony, the ALJ concluded that Call was able to perform work that exists in significant numbers in the national economy and was therefore not disabled.

Call claims the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DBI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Call argues that the ALJ's residual functional capacity determination was not supported by substantial evidence. Although the ALJ recognized that Call suffered from a "severe" back disorder with pain, he determined that she retained the ability to perform work involving a light level of exertion. The ALJ's determination comports fully with the findings of the agency reviewing physicians and those of Call's own treating physicians.

On October 4, 2001, Call underwent surgery for a left L5-S1 diskectomy to correct a workplace-related injury.[2] John Marshall, M.D., and J. Travis Burt, M.D., both with Highlands Neurosurgery, provided Call's primary treatment from the period following her 2001 surgery through the period covered in the current claim.

---

[2] As noted above, Call's current claim is bounded to the short time period of October 22, 2005 to December 31, 2006. Any discussion of facts outside this period provides background information only.

Turning to the applicable time frame, in June 2006 Thomas Phillips, M.D., a state agency physician, reviewed Call's records. He opined that Call could perform light work, provided the work involved only occasional postural activities and took into account limitations in her ability to push and pull with her lower extremities. Dr. Phillips also recommended that Call avoid activities that would subject her to concentrated exposure to vibration. Dr. Phillips' conclusions were buttressed by a second agency reviewing opinion that came to substantially similar conclusions regarding Call's physical capacities.

Evidence restricting Call further than the restrictions reflected in the state physicians' assessments dates back over three years prior to the period covered in the current claim. On April 22, 2002, Dr. Burt placed Call under "permanent restriction," including an inability to use her left foot for repetitive movements, as well as limiting her to only occasional bending and squatting. Call urges that Dr. Burt's 2002 opinion undermines the ALJ's findings.

Notably, however, Dr. Burt's initial 2002 opinion differs dramatically from both his and Dr. Marshall's records during the covered claim period. In 2006, both treating doctors noted marked improvements in Call's condition. Although Call complained of ongoing pain in the lower back with radiation to the left leg, Dr. Marshall noted that "it doesn't seem to bother her" when she is up and moving

around, that Call did not need narcotic medication, and that she "look[ed] more comfortable." (R. at 375.) Her physical examination was deemed "stable," and Dr. Marshall encouraged Call to participate in vocational rehabilitation, with a follow-up visit in six months. (*Id.*) Dr. Burt also expressly noted that Call's complaints of pain were "not surprising given the fact that [Call was] currently applying for disability and [had] applied several times in the past." (*Id.* at 374.)

Magnetic resonance imaging ("MRI") scans conducted in 2006 showed some post-operative changes with development of Schmorl's node and a slight interval increase in central disk protrusion, but no new or recurrent disc herniation. The results of physical examinations and motor tests were largely unremarkable. X rays taken after Call presented to the Bristol Regional Medical Center emergency room showed good alignment, intact vertical bodies, and well-maintained disk spaces. None of Call's treating physicians recommended further surgical intervention.

By 2005-2006, Dr. Marshall put Call on a post-operative plan that involved checkups at six-month intervals and that recommended weight loss to help ease her back pain. A check-up in 2007, several weeks after the claim period, reflected significant improvements to Call's physical condition and emotional mood after successfully participating in a weight loss program.

Thus, substantial evidence supports the ALJ's assessment of Call's physical impairments. To the extent that evidence in the record showed physical impairments, the ALJ properly incorporated the recommended medical restrictions into Call's residual functional capacity.

Call also argues that the ALJ lacked substantial evidence to support his findings that she did not suffer from any severe mental impairments and that she had no work-related mental limitations. Notably, the record is devoid of any evidence supporting mental impairment during the covered time period. Call points to medical history dating back to February 2005, when she was seen by Mount Rogers Community Service Board for a mental health intake evaluation.[3] Call complained of symptoms including adhedonia, crying episodes, depressed affect, and sleep disturbance. An evaluation diagnosed post-traumatic stress disorder, mood disorder with depressive features as a result of her back pain, and bereavement. As the ALJ noted, Call did not seek treatment for these diagnoses during the covered period.

The only other evidence on record relating to Call's claimed mental impairments is a consultative psychological evaluation performed by Kathy Jo Miller, M.Ed., in August 2007. Once again, Ms. Miller's assessment falls outside the

---

[3] Call also was seen by Linda R. Thompson, M.D., complaining of depression, anxiety, decreased energy, irritability, and crying spells in November 2002. Dr. Thompson gave Call samples of Lexapro. Dr. Thompson's evaluation, however, was performed far earlier than the covered period.

covered period. Call reported continuing chronic pain, trouble concentrating, diagnoses of attention-deficit-hyperactivity disorder and bipolar disorder, crying spells, bouts of anger/irritation, and feeling useless due to her physical limitations. While Ms. Miller diagnosed Call with non-specific untreated mild depression and found that Call "could certainly benefit from some type of mental health intervention," she assessed Call with a global assessment of functioning ("GAF") score of 60, indicating moderate, bordering on mild, symptoms and limitations.[4] Ms. Miller did not indicate that Call's depression would affect her abilities in the workplace.

Call now argues that the lack of evidence in the record regarding her mental impairments should have prompted the ALJ to order further consultative examinations. While the ALJ may not choose to ignore uncontradicted psychiatric evidence indicating serious impairments if there is a basis for questioning the severity of the impairments, the ALJ is under no obligation to do so when there is no such doubt. *See Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D.W. Va. 1985). As noted

---

[4] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

above, the plaintiff carries the burden of proving disability, and here, especially in regard to the bounded time period at issue in this case, Call has not provided evidence that would require the ALJ to inquire further into her claims. Thus, substantial evidence supports the ALJ's findings regarding Call's claims of mental impairment.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. Judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: January 4, 2011

/s/ JAMES P. JONES
United States District Judge